## BANYON *v.* THE STATE.

1. A failure to serve the solicitor-general with notice of the sanction of a petition for certiorari in a criminal case is not ground for dismissing the bill of exceptions in this court, assigning error upon the judgment of the court below overruling such petition.

2. An indictment which charges the defendant with illegally voting at a municipal election legally and regularly held at a certain time and place, on account of the defendant's being then and there a defaulter in a certain sum for taxes due by him to the State and county for a given year, sufficiently conforms to the requirements of the law in stating the offense.

3. Where a defendant is charged with the offense of illegally voting at a certain election, and the only evidence introduced on the trial in the county court tending to show that he actually voted at such election is a list of voters kept by one of the managers of the election, with the name of the defendant appearing thereon as a voter, a verdict finding the defendant guilty is contrary to the evidence; and the court erred in not sustaining the defendant's petition for certiorari on this ground.

Argued June 19, — Decided July 19, 1899.

Certiorari.    Before Judge Littlejohn.    Dooly superior court. May 13, 1899.

*W. A. Hawkins* and *E. F. Strozier,* for plaintiff in error.
*F. A. Hooper, solicitor-general,* contra.

LEWIS, J.    Jim Banyon was tried in the county court of Dooly county, under an indictment found by the grand jury of that county, charging him with the offense of illegal voting. The indictment charged the defendant "with the offense of a misdemeanor, for that the said Jim Banyon, on the 11th day of January, 1899, in the county aforesaid then and there unlawfully with force and arms, there being then and there legally and regularly held a municipal election for mayor and three aldermen, did vote illegally at said election, he, the said Jim Banyon, being then and there a tax defaulter in the sum of $2.30, same amount of taxes due by him to the State and county

for the year 1897, which amount he had had then and there
an opportunity of paying, agreeably to law.    Contrary to the
laws of said State, the good order, peace, and dignity thereof."
To this indictment the defendant filed a demurrer on the
grounds, (1) that it was void for want of certainty, in that it
failed to give him notice of the particular charge he was called
upon to answer, and thereby precluded him of his right to meet
said charge and refute the same with proper testimony; (2)
said indictment fails to allege to what county the defendant is
due taxes for the year therein specified; (3) said indictment
fails to allege that the said taxes were not paid for the year
therein stated.    The court overruled the demurrer, and the
defendant, after being placed on trial, was found guilty by the
jury.    He then petitioned the superior court for certiorari,
which was sanctioned by the judge, but, upon hearing the pe-
tition and the answer of the judge of the county court thereto,
the new trial prayed for in the petition was refused.    On this
judgment refusing the prayer of the petition for certiorari the
defendant assigns error in his bill of exceptions.

1. The defendant in error filed a motion to dismiss the writ
of error in this case, on the following ground: "Because the
solicitor-general of said county and circuit was not served with
a notice of said sanction of certiorari and of the time and place
of the hearing of the same."    It appears from the record that
service of the petition for certiorari and the order of court sanc-
tioning the same was acknowledged by W. B. Howard as solic-
itor of the county court of Dooly county.    When the case was
called for trial in the superior court on the petition and the an-
swer of the judge thereto, it does not appear that there was any
motion to dismiss the same because service of the sanction of
the writ of certiorari was not made upon the solicitor-general of
the circuit.    Had such a motion been made, under the ruling
of this court in *Butts* v. *State*, 90 *Ga.* 450, this would have been
a good ground for dismissing the petition for certiorari; but no
such motion having been made, and therefore the question not
having been passed on by the court below, it of course consti-
tutes no ground for dismissing the writ of error.    As the case was
tried before the judge of the superior court below on its merits

the presumption is that the State was there represented by proper counsel, and a failure to make such a motion amounted to a waiver by the State of notice that the petition for certiorari had been sanctioned.

2. Among the grounds of error complained of in the bill of exceptions, as well as in the petition for certiorari, was the judgment of the court overruling defendant's demurrer to the indictment. We think the indictment in this case stated the offense so plainly that the nature of the crime charged could be easily understood by the jury. This is all that the law requires upon the subject. The allegation in the indictment that the defendant was a tax defaulter, in that he failed to pay the amount of taxes due by him to the State and county for the year 1897, clearly refers to the State and county where the indictment was found, and could bear no other reasonable construction, they being the only State and county named or referred to in the indictment. We think, therefore, that the court was correct in overruling the demurrer.

3. It appears from the petition for certiorari, and the answer of the judge of the county court thereto, that substantially the following case was made out by the State on the trial in the county court: The defendant had paid no taxes for the year 1897, and returned none on the digest. The tax-collector testified that he supposed that the defendant owned property, such as household goods; he issued execution against him, by seeing his name on the city registration list and seeing him around town. A tax fi. fa. was introduced, issued December 20, 1898, for $2.30, State and county taxes for the year 1897. It was shown that a municipal election was held in Cordele on January 11, 1899. A list of voters kept during the election was introduced, over the objection of defendant's counsel, showing the name of Jim Banyon, written there by one of the managers of the election. This manager testified that he recorded the name, and was satisfied he would not have done so if the man had not voted. A ballot was also introduced, which was likewise objected to by defendant, corresponding to the number on the list of voters, upon which ballot appeared the names of the candidates in that election. The defendant introduced

no evidence. There was no testimony whatever identifying the defendant as the person who actually voted in that election under the name of Jim Banyon. The petition for certiorari alleges that the manager of the election, introduced by the State, swore that he took the ballots as they were offered and in each instance received the name as given by the voter, and that he did not recollect seeing the defendant vote and did not know whether he voted or not. This is not contradicted by the answer of the judge who tried the case in the county court. There was no proof that the defendant was even seen at the polls that day. Conceding that there was evidence sufficient to show that this defendant was a tax defaulter, the only testimony relied on to show the further material fact that he actually voted at the election named in the indictment is the fact that a manager of the election wrote his name on the list of voters. It does not even appear from the testimony that there was no other person of the same name in the county; and we do not think that, considering the nature of popular elections in this country, it is necessarily a matter of unreasonable inference that what is known as "floating voters" sometimes cast their ballots under assumed names, and usually select the name of some person on the registry list not present, in order to ensure the ballot being received by the managers. The law presumes the innocence of every defendant until his guilt is made to appear beyond a reasonable doubt; but to authorize a conviction of illegal voting simply because the defendant's name appears upon the election papers, without any evidence whatever that it was there by his authority or consent, and without any testimony that he was even present at the election, we think would be reversing the order of the above rule.

We do not think there was any error in admitting the list of voters and ballot after the same had been identified by the officers of the election. These papers constituted a legitimate link in the chain of the State's case. But alone they can not furnish proof of the guilt of the defendant.

*Judgment reversed. All the Justices concurring.*